# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Susan McKay, on behalf of herself and all others similarly situated in California, and Meghan Eveland, on behalf of herself and all others similarly situated in Pennsylvania, | ) ) ) ) ) | MDL 1785 |
| Plaintiffs, | ) ) ) | Judge David C. Norton |
| vs. | ) ) ) | **FIRST AMENDED, CONSOLIDATED, CLASS-ACTION COMPLAINT** |
| Bausch & Lomb, Inc., | ) ) | |
| Defendant. | ) | |

## NATURE OF THE CASE

1.     Defendant produced, manufactured, distributed, and sold ReNu with MoistureLoc contact solution, which Plaintiffs and the class members purchased from September 1, 2004 to April 10, 2006 (the "Class Period").  The ReNu that Defendant sold to Plaintiffs and the class members during the Class Period was defective, thereby violating California and Pennsylvania statutory law and causing Plaintiffs damages and/or entitling them to restitution.  Under California and Pennsylvania common law, Plaintiffs and the class members also unjustly enriched Defendant during the Class Period by paying Defendant for its defective ReNu.

## JURISDICTION AND VENUE

2.     This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. §1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and

costs.[1]  This Court also has jurisdiction under 28 U.S.C. §1332(d) because "one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state."  The Court also has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court and Defendant systematically and continually conducts business here and throughout the U.S., including marketing, advertising, and sales directed to residents of the jurisdictions where Plaintiffs respectively reside.

3.       Venue is proper in this District pursuant to 28 U.S.C. §1391(a) and (c) because as a corporation Defendant is "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction," and by virtue of the MDL Panel's August 14, 2006 Order.

## PARTIES

4.       Plaintiff Susan McKay is a California resident who purchased ReNu during the Class Period and discarded some or all of it per Defendant's direction.

5.       Plaintiff Meghan Eveland is a Pennsylvania resident who purchased ReNu during the Class Period and discarded some or all of it per Defendant's direction.

6.       Defendant Bausch & Lomb, Inc. is a New York Corporation with its principal place of business located at 1 Bausch & Lomb Place, Rochester, New York, 14604.  Bausch & Lomb is an eye-health company, whose core products include ophthalmic surgical and pharmaceutical products, soft and rigid gas-permeable contact lenses, and lens-care products, including ReNu.

---

[1] *See* 28 U.S.C. ' 1332(d)(2), (6) (2006).

## FACTUAL ALLEGATIONS

*Description of ReNu*

7.      Soft lens-care products include daily cleaners, salines, hydrogen-peroxide disinfectants, ultraviolet-light disinfectants, enzymatic cleaners, rewetting agents, and multipurpose solutions.    The contact-lens industry has evolved from systems-based products of the early 1970's to today's all-in-one-bottle lens care.  Multipurpose solutions combine cleaning, rinsing, disinfecting, and storing solutions all in one bottle.

8.      According to Defendant's most recently filed Form 10-K, dated March 9, 2005, revenues from lens care products constituted 23% of its total revenues in fiscal year 2004, growing 5% from 2003 (or 2% excluding the effect of currency).  The ReNu brand is Defendant's flagship lens-care brand.

9.      On May 19, 2004, Defendant received clearance from the FDA to release ReNu, and in September 2004, Defendant released it.

10.      Jeff Nardoci, Defendant's vice president, hyped the good quality of the ReNu Solution claiming, "[i]ts formula was engineered to be the first and only multipurpose solution that may help improve comfort for patients experiencing contact lens dryness.

11.      Further, Nardoci stated that "[w]e believe that when our [ReNu] is commercially available in the fall, it will prove to be helpful in reducing the number of contact lens dropouts because of its unique ability to deliver sustained comfort and resist protein uptake while providing excellent disinfection."

12.      According to Defendant's March 3, 2005, 10-K, Defendant introduced ReNu in Hong Kong, Singapore, and Malaysia during the fourth quarter of 2004.

3

13.     On November 29, 2005, the FDA cleared labeling that included a specific indication for ReNu's use with silicone-hydrogel contact lenses and an additional claim that ReNu conditioned contact lenses, which claims supported Defendant's original "sustained comfort" labeling claim.

### ReNu's defect and non-U.S. recall

14.     Despite Defendant's claim that its ReNu produced "sustained comfort," ReNu, during the Class Period, was defective as its use resulted in, or had the propensity to result in, a condition known as fusarium keratitis, a serious eye infection that can develop through the whole depth of the cornea–the eye's outermost layer.  Fusarium keratitis can require prolonged drug therapy with antifungals, such as natamycin, nystatin, and amphotericin B.  If drugs are ineffective and the eye is damaged, surgery may be necessary to remove fungal ulcers/lesions.  Furthermore, without treatment, fusarium keratitis can scar the cornea, leading to significant loss of vision, the need for a corneal transplant, or blindness.

15.     Incidents of patients diagnosed with fusarium keratitis were reported among contact-lens users in Asia in November 2005.  Singapore health officials then noticed an increase in reports of infection in January 2005 and discovered 39 cases involving contact-lens users from 2005 to February 2006.  Additional cases have recently been reported in Malaysia and Hong Kong.

16.     In April 2006, Singapore's Ministry of Health issued a press release stating the following in relevant part:

There has [*sic*] been an additional 36 cases of fungal corneal infection reported since the last update in February (39 cases). In total, 75 cases of fungal corneal infection (which tested positive for Fusarium) with a history of contact lens use have been reported for the period 1 Nov 2004 to 12 April 2006. This compares with two reported cases from 1 Jan to 31 Oct 2004.

In view of the potentially serious adverse visual consequences of fungal corneal infection, the Ministry of Health had on 17 Feb 2006 advised all contact lens users as a precautionary measure to discontinue the use of Bausch and Lomb's ReNu multipurpose contact lens solution for the time being.

\*     \*     \*

A comprehensive case-control study (comparing contact lens users with infection and contact lens users without cornea infection) was undertaken in Feb-Mar 2006 to investigate risk factors for the spike in fungal cornea infection. The study found a strong association between corneal infection and the use of ReNu solution. This association remained strong even after taking into consideration socio-demographic, lens, hygiene and environmental factors. The findings are also consistent with recent observations made in the US and Hong Kong.

17.     According to a March 31, 2006 Reuters article, Singapore authorities linked the incidents of fusarium keratitis to ReNu.

18.     Afterwards, Hong Kong officials explicitly asked Defendant to pull ReNu from the shelves.

19.     According to a March 31, 2006 Morningstar article, ReNu is the only lens-care solution to have been identified by Asian officials as the cause of the increase in incidents of fusarium keratitis: "no other contact-lens solution has been singled out."

20.     In response to ReNu being singled out as the cause for the increase in incidents of fusarium keratitis in Asia and requests by Asian officials to pull it from the shelves, Defendant suspended ReNu sales in Hong Kong and Singapore in February 2006.

5

***Defective ReNu's U.S. impact***

21.    On March 8, 2006, the Centers for Disease Control received a report from an ophthalmologist in New Jersey concerning three patients, all soft contact-lens users, who had been diagnosed with fusarium keratitis.

22.    According to the CDC, in addition to those three incidents, "initial contact with several corneal disease specialty centers in the United States have also seen recent increases in fusarium keratitis."

23.    In a April 10, 2006 report entitled "Fusarium Keratitis–Multiple States, 2006," the CDC stated that as of April 9, 2006, 109 cases of suspected fusarium keratitis were under investigation by CDC and public-health authorities.

24.    Out of the 109 cases, 30 have been fully investigated.  Out of the 30 fully investigated cases, 28 of the patients wore soft contact lenses.  Out of those 28, 26 patients used ReNu.

25.    On or about April 10, 2006, the Food and Drug Administration and the CDC issued a joint press release, "alerting health care professionals and their patients who wear soft contact lenses to an increasing number of reports in the United States of rare but serious fungal infections in the eye that can cause permanent loss of sight."  The press release indicated further that, "[s]ome patients have reported a significant loss of vision, resulting in the need for a corneal transplant."  The FDA indicated that a fungus called "fusarium" was identified as the reported infections' cause.

***Defendant's worldwide recall***

26.    On April 10, 2006, Defendant announced that it was suspending the shipments of ReNu to U.S. retailers.

27.    On or about April 13, 2006, Defendant requested that U.S. retailers remove ReNu from their shelves and recommended that consumers switch to another lens-care solution until the conclusion of the investigation into reports of fungal keratitis infections among contact-lens wearers in the U.S.

28.    On or about April 14, 2006, the FDA issued a statement supporting Defendant's decision to withdraw ReNu from the market during the pending investigation.

29.    On or about May 15, 2006, Defendant announced its intention to implement a worldwide ReNu withdrawal and direction to U.S. customers to discard unused solution.

***Defendant's cover-up***

30.    Plaintiffs are informed and believe that on or about May 16, 2006, the FDA reported that Defendant failed to promptly notify it within 30 days of the approximately 35 cases of fungal-keratitis infections among contact-lens wearers in Singapore.  This failure constituted one of among 20 potential violations noted by the FDA after inspecting Defendant's Greenville, SC factory, where Defendant made ReNu for U.S. and Asian market distribution.

31.    Beginning as early as September 1, 2004 and continuing until April 10, 2006, Defendant knowingly sold defective ReNu to consumers.

***Plaintiffs' ReNu purchases, discards, and damages***

32.    In or about January 2006, Plaintiff Susan McKay purchased four or five bottles of ReNu.  In or about May 2006, after Defendant directed her and the consuming

public to discard their unused ReNu, she did so by throwing all four or five bottles in her trashcan.

33.    In or about March 2006, Plaintiff Meghan Eveland purchased two bottles of ReNu.  In or about May 2006, after Defendant directed her and the consuming public to discard their unused ReNu, she did so by throwing her remaining 1¾ bottles in her trashcan.

34.    Plaintiffs suffered money damages by paying for Defendant's defective ReNu and discarding it per Defendant's direction because Defendant refuses to fully reimburse Plaintiffs for the defective ReNu that Defendant insisted they (and which they did) discard.

## CLASS-ACTION ALLEGATIONS

35.    Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following classes:

> **California Class (alleged by Plaintiff McKay)**
> All people in California who purchased ReNu, other than for resale, from September 1, 2004 through April 10, 2006 and discarded any remaining quantity following Defendant's direction to do so.
>
> **Pennsylvania Class (alleged by Plaintiff Eveland)**
> All people in Pennsylvania who purchased ReNu, other than for resale, from September 1, 2004 through April 10, 2006 and discarded any remaining quantity following Defendant's direction to do so.
>
> Excluded from the classes are Defendant; entities in which Defendant has a controlling interest; Defendant's employees, officers, or directors; Defendant's legal representatives, successors, or assigns; judicial officers who may hear the case or related persons; and jurors or related persons.

36.    Plaintiffs do not know the exact size of the classes, since this information is in Defendant's exclusive control.  But based on the nature of the trade and commerce involved, Plaintiffs believe that the classes number in the millions and the class members are geographically dispersed throughout California and Pennsylvania.  Therefore, joinder of all class members in their respective state classes would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

37.    Plaintiffs' claims within the respective classes are typical of other class members' claims because all Plaintiffs were injured through the uniform conduct and omissions described.   Accordingly, by proving their own claims, Plaintiffs will presumptively prove their respective class members' claims.

38.    Common legal and factual questions among and within the respective classes predominate, such as:

      a.    Whether ReNu Solution was defective;

      b.    Whether Defendant was aware of ReNu's defect yet continued selling it;

      c.    Whether Defendant breached the Plaintiffs' respective states' implied warranties of merchantability;

      d.    As to California class members, whether Defendant violated California's consumer-protection statutes;

      e.    Whether Defendant was unjustly enriched;

      f.    The duration of Defendant's defective ReNu sales;

      g.    Whether and when Plaintiffs purchased and discarded their ReNu;

      h.    Whether Plaintiffs and class members sustained money damages and the proper measure of their damages; and

      i.    Whether restitution is appropriate and, if so, how much.
.

39.    Plaintiffs can and will fairly and adequately represent and protect their respective class members' interests and have no interests that conflict with or are antagonistic to their respective class members' interests.    Plaintiffs' attorneys are experienced and competent in complex class-action and consumer-protection antitrust litigation.

40.    Class certification of the classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for fairly and efficiently adjudicating the claims asserted given that:

a.    Common questions of law and fact predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating these common issues on classwide bases rather than on repetitive, individual bases;

b.    Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually prosecuting separate actions; and

c.    Despite the relatively small size of each individual class member's claim, their respective class claims' aggregate volumes, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to the classes.

41.    Class certification is also appropriate pursuant to Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure because prosecuting separate actions would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.

**COUNT I**[2]

**(Applicable to Plaintiff McKay and California class members)**
**VIOLATION OF CALIFORNIA SONG-BEVERLY CONSUMER**
**WARRANTY ACT, CAL. CIV. CODE §1791, *et seq.***

42.    Plaintiff McKay realleges and incorporates paragraphs 1-41 of this Complaint.

42.    ReNu is a "consumer good" as defined in Cal. Civil Code §1791(a).

44.    Plaintiff McKay is a buyer of Defendant's consumer goods within the meaning of Cal. Civil Code §§1791(b) and 1794(a).

45.    To be merchantable, goods must, among other things, at least be fit for the ordinary purposes for which such goods are used.

46.    Defendant's defective ReNu was sold with the implied warranty of merchantability, meaning it would (a) pass without objection in the trade; (b) was fit for the ordinary purpose for which is was used; (c) was adequately contained, labeled, and packaged; and (d) conformed to Defendant's promises or affirmations of fact made on its container and label.

47.    By virtue of its defect, Defendant's ReNu did not (a) pass without objection in the trade, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction; (b) was not fit for its ordinary purpose for which contact solution is used, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per

---

[2] Before removal, MDL consolidation, and transfer, Tina Whitten filed *Whitten v. Bausch & Lomb, Inc.*, No. 2:06-cv-3639, in California state court, which named Wal-Mart as an additional defendant.  Wal-Mart has filed a motion to dismiss on the basis that Plaintiffs' Consolidated, Amended Complaint did not include it as a Defendant.  Whitten's California counsel and Wal-Mart have briefed Wal-Mart's motion and await this Court's ruling.

Defendant's direction; (c) was not adequately contained, labeled, and packaged, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction; and, accordingly (d) did not conform to the promises or affirmation of fact made on its container and label as a product that solely cleans, disinfects, rinses, stores, rewets, and removes protein daily for soft contact lenses, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction.

48.     As a direct result of Defendant's breach of the Song-Berry Consumer Warranty Act's implied warranty of merchantability, Plaintiff McKay and California class members suffered money damages.

## COUNT II
### (Applicable to Plaintiff McKay and California class members)
### VIOLATION OF CALIFORNIA U.C.C. §2314

49.     Plaintiff McKay realleges and incorporates paragraphs 1-41 of this Complaint.

50.     ReNu is a "good" as defined in Cal. U.C.C. §2105.

51.     Defendant is a "merchant" as defined in Cal. U.C.C. §2104.

52.     To be merchantable, goods must, among other things, at least be fit for the ordinary purposes for which such goods are used.

53.     Defendant's defective ReNu was sold with the implied warranty of merchantability, meaning it would (a) pass without objection in the trade; (b) was fit for the ordinary purpose for which is was used; (c) would run of even kind, quality, and quantity within each unit and among all units involved; (d) was adequately contained, labeled, and packaged; and (e) conformed to Defendant's promises or affirmations of fact

made on its container and label.

54.    By virtue of its defect, Defendant's ReNu did not (a) pass without objection in the trade, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction; (b) was not fit for its ordinary purpose for which contact solution is used, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction; (c) did not run of even kind, quality, and quantity within each unit and among all units involved in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction; (d) was not adequately contained, labeled, and packaged, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction; and, accordingly (e) did not conform to the promises or affirmation of fact made on its container and label as a product that solely cleans, disinfects, rinses, stores, rewets, and removes protein daily for soft contact lenses, in that it caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction.

55.    As a direct result of Defendant's breach of the California U.C.C.'s implied warranty of merchantability, Plaintiff McKay and California class members suffered money damages.

## COUNT III
### (Applicable to Plaintiff McKay and California class members)
### VIOLATION OF CAL. BUS. & PROF. CODE §17200, *et seq*.

56.    Plaintiff McKay realleges and incorporates paragraphs 1-41 of this Complaint.

57.    Defendant's business practices, in advertising, marketing, and selling its

ReNu contact solution, while failing to disclose that ReNu caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction, were unlawful and thus violated Cal. Bus. & Prof. §17200, in that Defendant's advertisements, marketing, and sales materials contained untrue or misleading statements (*i.e.,* that ReNu solely cleaned, disinfected, rinsed, stored, reweted, and removed protein daily for soft contact lenses rather than that it caused or had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction) that were known by Defendant, or which by the exercise of reasonable care should have been known, to be untrue or misleading.

58.    Defendant's business practices, in advertising, marketing, and selling its ReNu contact solution, while failing to disclose the material fact that ReNu caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction, were fraudulent and thus violated Cal. Bus. & Prof. §17200, in that Defendant's advertisements, marketing, and sales materials contained untrue or misleading statements (*i.e.,* that ReNu solely cleaned, disinfected, rinsed, stored, reweted, and removed protein daily for soft contact lenses rather than that it caused or had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction) that were known by Defendant, or which by the exercise of reasonable care should have been known, to be untrue or misleading.

59.    Defendant's business practices, in advertising, marketing, and selling its ReNu contact solution, while failing to disclose the material fact that ReNu caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction, were unfair and thus violated Cal. Bus. & Prof. Code §17200, in

that Defendant's advertisements, marketing, and sales materials contained untrue or misleading statements (*i.e.,* that ReNu solely cleaned, disinfected, rinsed, stored, reweted, and removed protein daily for soft contact lenses rather than that it caused or had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction) that were known by Defendant, or which by the exercise of reasonable care should have been known, to be untrue or misleading.

60.    Despite Defendant's knowledge of material facts not known to Plaintiff McKay or California class members; despite Defendant actively concealing material facts from Plaintiff McKay and California class members; and in light of Defendant's partial representations and suppression of various material facts, in advertising, marketing, and selling its ReNu, Defendant made the material misrepresentations and omissions set forth in this Complaint.  ReNu caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction.    Defendant repeatedly advertised, marketed, and sold ReNu without disclosure that its use resulted in or could result in fusarium keratitis thus requiring that McKay discard it per Defendant's direction.  Defendant was aware that, or upon reasonable investigation should have been aware that, ReNu caused and had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction.

61.    Plaintiff McKay and California class members purchased ReNu contact-lens solution, which purchases would not have occurred had Defendant disclosed the material fact that ReNu caused or had the propensity to cause fusarium keratitis thus requiring that McKay discard it per Defendant's direction.  Further, once Defendant

became aware that ReNu caused and had the propensity to cause fusarium keratitis, Defendant failed to act quickly in alerting Plaintiff McKay and California class members.

62.     Plaintiff McKay and California class members have been monetarily injured as a result of Defendant's unlawful, fraudulent, and/or unfair business acts or practices and unfair, deceptive, untrue, and/or misleading advertising and/or material omissions, as set forth in this Complaint.

63.     As a direct result of Defendant's violations of Cal. Bus. & Prof. Code §17200, *et seq*., thus requiring that McKay and California class members discard their ReNu per Defendant's direction, Plaintiff McKay and California class members lost money are entitled to restitution of all amounts paid to Defendant for Defendant's ReNu solution, as well as disgorgement, interest, attorneys' fees, and costs, all of which injuries and/or remedies Plaintiff McKay and California class members expect to be redressed by a favorable decision.

<u>**COUNT IV**</u>
**(Applicable to Plaintiff McKay and California class members)**
**VIOLATION OF CAL. BUS. & PROF. CODE §17500, *et seq.***

64.     Plaintiff McKay realleges and incorporates paragraphs 1-41 of this Complaint.

65.     Defendant made a series of representations disseminated to the California public as to the uses of ReNu in advertisements, product descriptions, and other sales materials.

66.     Defendant's representations were false in that Defendant failed to disclose, concealed, suppressed, or omitted material facts, including, the non-disclosure that ReNu caused and had the propensity to cause fusarium keratitis thus requiring that McKay

discard it per Defendant's direction, which representations and/or material omissions violated Cal. Bus & Prof. Code §17500.

67.    Defendant knew, or in the exercise of reasonable care, should have known that its statements and representations concerning ReNu's ability to solely clean, disinfect, rinse, store, rewet, and remove protein daily for soft contact lenses, as opposed to causing and having the propensity to cause fusarium keratitis, which cause and propensity to cause Defendant failed to disclose thus requiring that McKay discard it per Defendant's direction, were untrue, misleading, and/or omitted material information.

68.    Plaintiff McKay and California class members have been monetarily injured as the result of Defendant's false and/or misleading representations and/or omissions.

69.    As a direct result of Defendant's violations of Cal. Bus. & Prof. Code §17500, *et seq.*, thus requiring that McKay and California class members discard their ReNu per Defendant's direction, Plaintiff McKay and California class members lost money are entitled to restitution of all amounts paid to Defendant for Defendant's ReNu solution, as well as disgorgement, interest, attorneys' fees, and costs, all of which injuries and/or remedies Plaintiff McKay and California class members expect to be redressed by a favorable decision.

### COUNT V
**(Applicable to Plaintiff McKay and California class members)**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE §1750 *et seq.***

70.    Plaintiff McKay realleges and incorporates paragraphs 1-41 of this Complaint.

71.    Defendant is a "person" within the meaning of Cal. Civ. Code §§1761(c)

17

and 1770, and it provides "goods" within the meaning of Cal. Civ. Code §§1761(a) and 1770.

72.    Plaintiff McKay is a "consumer" within the meaning of Cal. Civ. Code §§1761(d) and 1770, and his ReNu purchases constituted a "transaction" within the meaning of Cal. Civ. Code §§1761(e) and 1770.

73.    Defendant undertook its acts, practices, representations, material omissions, concealment, and course of conduct with respect to the sale of its ReNu in transactions that resulted in the sale of goods to consumers, and these sales were intended to induce, and in fact did induce, Plaintiff McKay to purchase for personal use ReNu that she otherwise would not have purchased had she known of ReNu's true characteristics.

74.    Further, and alternatively, Defendant's suppression and/or concealment of the material fact that use of its ReNu presented a serious health risk (and was not suitable for human use and/or consumption) thus requiring that McKay discard it per Defendant's direction violated California's Consumer Legal Remedies Act in that:

   a.    Defendant represented that ReNu had sponsorship, approval, status, characteristics, uses, or benefits that it did not have, in violation of Cal. Civ. Code §1770(a)(5); and

   b.    Defendant represented that ReNu had a particular standard or quality that it did not have, in violation of Cal. Civ. Code §1770(a)(7).

75.    Despite Defendant's knowledge of material facts not known to Plaintiff McKay or California class members; despite Defendant actively concealing material facts from Plaintiff McKay and California class members; and in light of Defendant's partial representations and suppression of various material facts, Defendant misrepresented or concealed the true nature and characteristics of its ReNu with the intent of inducing

Plaintiff McKay to believe its claims and to purchase ReNu to their detriment.

76.     Defendant suppressed and concealed the material fact that its ReNu presented serious health risks to consumers.  Defendant also suppressed and concealed the material fact that its ReNu caused and has the propensity to cause fusarium karatitis thus requiring that McKay discard it per Defendant's direction.

77.     Pursuant to Cal. Civ. Code §1782(a), on July 24, 2006 (which is more than 30 days before this Complaint's filing), class member Michael Skandros, on behalf of himself and California class members, sent written notice to Defendant by certified mail where he demanded that Defendant correct its unfair and deceptive acts; contact and provide refunds to him and California class members; and otherwise rectify its conduct with respect to ReNu.  Defendant failed to make or provide Skandros and California class members an appropriate correction, repair, replacement, or other remedy with respect to the ReNu that they all purchased.

78.     As a direct result of Defendant's violations of Cal. Civ. Code §1750 *et seq.*, Plaintiff McKay and California class members are entitled to actual damages in the amounts paid for their ReNu, restitution, punitive damages, and attorneys' fees pursuant to Cal. Civ. Code §1780(a), all of which injuries and/or remedies Plaintiff McKay and California class members expect to be redressed by a favorable decision.

<u>**COUNT VI**</u>
**(Applicable to all Plaintiff McKay and California class members)**
**UNJUST ENRICHMENT UNDER CALIFORNIA LAW**

79.     Plaintiff McKay realleges and incorporates paragraphs 1-41 of this Complaint.

80.    As the result of Defendant selling Plaintiff McKay and Plaintiff McKay paying Defendant for defective ReNu, Plaintiff McKay and California class members conferred a benefit upon Defendant, and Defendant received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendant to retain it without paying this benefit's reasonable value to Plaintiff McKay and California class members.

81.    As a direct result of Defendant's unjust enrichment, Plaintiff McKay and California class members suffered injury and seek an order directing Defendant to return to them the amount each of them improperly paid to Defendant, plus interest.

## COUNT VII
### (Applicable to Plaintiff Eveland and Pennsylvania class members)
### VIOLATION OF PENNSYLVANIA U.C.C. §2314

82.    Plaintiff Eveland realleges and incorporate paragraphs 1-41 of this Complaint.

83.    ReNu is a "good" as defined in 13 Pa. Cons. Stat. §2105.

84.    Defendant is a "merchant" as defined in 13 Pa. Cons. Stat. §2104.

85.    To be merchantable, goods must, among other things, at least be fit for the ordinary purposes for which such goods are used.

86.    Defendant's defective ReNu was sold with the implied warranty of merchantability, meaning it would (a) pass without objection in the trade; (b) was fit for the ordinary purpose for which is was used; (c) would run of even kind, quality, and quantity within each unit and among all units involved; (d) was adequately contained, labeled, and packaged; and (e) conformed to Defendant's promises or affirmations of fact made on its container and label.

87.    By virtue of its defect, Defendant's ReNu did not (a) pass without objection in the trade, in that it caused and had the propensity to cause fusarium keratitis thus requiring that Eveland discard it per Defendant's direction; (b) was not fit for its ordinary purpose for which contact solution is used, in that it caused and had the propensity to cause fusarium keratitis thus requiring that Eveland discard it per Defendant's direction; (c) did not run of even kind, quality, and quantity within each unit and among all units involved in that it caused and had the propensity to cause fusarium keratitis thus requiring that Eveland discard it per Defendant's direction; (d) was not adequately contained, labeled, and packaged, in that it caused and had the propensity to cause fusarium keratitis thus requiring that Eveland discard it per Defendant's direction; and, accordingly (e) did not conform to the promises or affirmation of fact made on its container and label as a product that solely cleans, disinfects, rinses, stores, rewets, and removes protein daily for soft contact lenses, in that it caused and had the propensity to cause fusarium keratitis thus requiring that Eveland discard it per Defendant's direction.

88.    As a direct result of Defendant's breach of the implied warranty of merchantability, Plaintiff Eveland and Pennsylvania class members suffered money damages.

**COUNT VIII**
**(Applicable to Plaintiff Eveland and Pennsylvania Class)**
**UNJUST ENRICHMENT UNDER PENNSYLVANIA LAW**

89.    Plaintiff Eveland realleges and incorporate paragraphs 1-41 of this Complaint.

90.    As the result of Defendant selling Plaintiff Eveland and Plaintiff Eveland paying Defendant for defective ReNu, Plaintiff Eveland and Pennsylvania class members

conferred a benefit upon Defendant, and Defendant received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendant to retain it without paying this benefit's reasonable value to Plaintiff Eveland and Pennsylvania class members.

91.     As a direct result of Defendant's unjust enrichment, Plaintiff Eveland and Pennsylvania class members suffered injury and seek an order directing Defendant to return to them the amount each of them improperly paid to Defendant, plus interest.

## JURY TRIAL DEMAND

92.     Pursuant to Fed. R. Civ. P. 38(b), Plaintiff McKay Skandros, and Eveland demand a trial by jury of all claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs McKay and Eveland request that this Court enter judgment in their respective class members' favor and against Defendants, as follows:

A.     That this Court determine that this action may be maintained as a class action under Rule 23(b)(1)(A) and/or (b)(3) of the Federal Rules of Civil Procedure and certify the California and Pennsylvania classes;

B.     With respect to Count I, affecting McKay and California class members, that this Court rule that Defendant violated California law and that compensatory damages and restitution are appropriate pursuant to Cal. Civ. Code §1794;

C.     With respect to Count II, affecting McKay and California class members, that this Court rule that Defendant violated California law and that compensatory damages are appropriate pursuant to Cal. Civ. Code §1794(a) and Cal. U.C.C. §2714(2);

D.     With respect to Count III, affecting McKay and California class members, that this Court rule that Defendant violated California law and that restitution is appropriate pursuant to Cal. Bus. & Prof. Code §17203 and Cal. Civ. Code §3345;

E.     With respect to Count IV, affecting McKay and California class members, that this Court rule that Defendant violated California law and that restitution is appropriate pursuant to Cal. Bus. & Prof. Code §17535;

F.     With respect to Count V, affecting McKay and California class members, that this Court rule that Defendant violated California law and that compensatory damages, punitive damages, restitution, and all other available relief are appropriate pursuant to Cal. Bus. & Prof. Code §1780;

G.     With respect to the Count VI, affecting McKay and California class members, that this Court determine that Defendant was unjustly enriched and that restitution is appropriate;

H.     With respect to Count VII, affecting Eveland and Pennsylvania class members, that this Court rule that Defendant violated Pennsylvania law and that compensatory damages are appropriate pursuant to 13 Pa. Cons. Stat. §2714(b);

I.     With respect to the Count VIII, affecting Eveland and Pennsylvania class members, that this Court determine that Defendant was unjustly enriched and that restitution is appropriate;

J.     That this Court award Plaintiffs post-judgment interest, their costs, and reasonable attorneys' fees, as applicable; and

K.     That this Court order any other relief as it deems just and proper.

Dated:  November 6, 2007

Respectfully submitted,

s/ *Jesse A. Kirchner*

Jesse Allen Kirchner (S.C. Bar # 8067)
**THURMOND KIRCHNER & TIMBES, P.A.**
15 Middle Atlantic Wharf, Suite 101
Charleston, SC 29401
Telephone:   (843) 937-8000
Facsimile:    (843) 937-4200
E-mail:         jkirchner@tktlawfirm.com

AND

Gedney M. Howe, III (S.C. Bar #2699)
**GEDNEY M. HOWE, III, P.A.**
8 Chalmers Street, P.O. Box 1034
Charleston, SC 29402
Telephone:     (843) 722-8048

Facsimile:      (843) 722-2140
E-Mail:         cgear@gedneyhowe.com

***Economic-Loss Class-Action Plaintiffs'
Liaison Counsel***

Gordon Ball
**BALL & SCOTT**
550 Main Ave., Suite 750
Knoxville, TN 37902
Telephone:  (865) 525-7028
Facsimile:   (865) 525-4679
E-mail:       gball@ballandscott.com

***Economic-Loss Class-Action Plaintiffs'
Lead Counsel***

Daniel R. Karon
**GOLDMAN SCARLATO & KARON,
P.C.**
55 Public Square, Suite 1500
Cleveland, OH  44113-1998
Telephone:  (216) 622-1851
Facsimile:   (216) 622-1852
E-mail:       karon@gsk-law.com

Krishna B. Narine
**LAW OFFICE OF KRISHNA B.
NARINE**
7839 Montgomery Ave.
Elkins Park, PA 19027
Telephone:  (215) 782-3240
Facsimile:   (215) 782-3241
E-mail:       knarine@kbnlaw.com

Isaac L. Diel
**SHARP, McQUEEN, McKINLEY,
McQUEEN & DODGE, P.A.**
Financial Plaza
6900 College Boulevard, Suite 285
Overland Park, KS  66211
Telephone:  (913) 661-9931
Facsimile:   (913) 661-9935
E-mail:       dslawkc@aol.com

John G. Felder, Jr.
**MCGOWAN HOOD FELDER & JOHNSON**
1405 Calhoun Street
Columbia, SC  29201
Telephone:  (803) 779-0100
Facsimile:   (803) 787-0750
E-Mail:        jfelder@mcgowanhood.com
Chad McGowan
**MCGOWAN HOOD FELDER & JOHNSON**
1539 Health Care Drive
Rock Hill, SC  29732
Telephone:   (803) 327-7800
Facsimile:    (803) 328-5656
E-Mail:        cmcgowan@mcgowanhood.com

Gary E. Mason
Donna F. Solen
**THE MASON LAW FIRM, PC**
1225 19th Street NW
Washington, DC   20036
Telephone:  (202) 429-2290
Facsimile:   (202) 429-2294
E-Mail:        gmason@masonlawdc.com
                    dsolen@masonlawdc.com

Melissa M. Harnett
**WASSERMAN COMDEN & CASSELMAN,
LLP**
5567 Reseda Boulevard, Suite 330
Tarzana, CA  91357-7033
Telephone:   (818) 705-6800
Facsimile:    (818) 345-0162
E-Mail:        mharnett@wcclaw.com

Robert G. Rikard
**WHETSTONE MYERS PERKINS & YOUNG**
The Vista
601 Devine Street
Columbia, SC  29201
Telephone:  (803) 799-9400
Facsimile:   (803) 799-2017
E-Mail:        rrikard@attorneyssc.com

James P. Frantz
**FRANTZ TOWNSEND FOLDENAUER, LLP**
600 W. Broadway, Suite 1200
San Diego, CA  92101
Telephone:   (619) 233-1010
Facsimile:   (619) 525-7672
E-Mail:        jpf@ftflaw.com

Patrick M. Keegan
**KEEGAN MACALUSO & BAKER, LLP**
The Plaza
4370 LaJolla Village Drive, Suite 640
San Diego, CA  92122
Telephone:   (858) 552-6750
Facsimile:   (858) 552-6749
E-Mail:        pkeegan@kmb-law.com

Jeffrey F. Keller
**KELLER GROVER LLP**
425 Second Street, Suite 500
San Francisco, CA  94107
Telephone:   (415) 543-1305
Facsimile:   (415) 543-7861
E-Mail:        jfkeller@kellergrover.com

R. Frederick Walters
Karen W. Renwick
**WALTERS BENDER STROHBEHN VAUGHN**
2500 City Center Square
1100 Main
Kansas City, MO  64105
Telephone:   (816) 421-6620
Facsimile:   (816) 421-4747
E-Mail:        fwalters@sbsvlaw.com
                    krenwick@wbsvlaw.com

*Economic-Loss Class-Action Plaintiffs'*
*Steering Committee*